G. KENT YOWELL, Plaintiff-Appellant, v. RONALD H. RINGER, Defendant-Appellee.

Second District   No. 2—90—1384

Opinion filed July 30, 1991.—Rehearing denied September 13, 1991.

G. Kent Yowell, of Northbrook, appellant *pro se.*

Hall, Holmberg, Roach, Johnston & Fisher, of Waukegan (Jeffrey C. Thut, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, G. Kent Yowell, appeals from a jury verdict in favor of the defendant, Ronald H. Ringer, on plaintiff's claim for legal fees alleged to be owed him by the defendant. On appeal, plaintiff raises the following issues: whether the jury's verdict was against the manifest weight of the evidence; whether defendant's closing argument denied plaintiff a fair trial; and whether the jury was properly instructed. We affirm.

On August 15, 1989, plaintiff, an attorney licensed to practice in the State of Illinois, filed a complaint at law against defendant seeking payment for legal services rendered to the defendant by the plaintiff. The complaint alleged that the parties had entered into an agreement whereby plaintiff agreed to perform legal services for the defendant, and defendant agreed to pay the sum of $150 per hour plus costs for plaintiff's legal services. The complaint further alleged that the plaintiff performed legal services for the defendant, that invoices were sent to defendant and that defendant did pay certain amounts to the plaintiff. Finally, the complaint alleged that there was an outstanding balance of $15,160.21, which defendant had not paid and which was owed to the plaintiff.

Defendant filed an answer admitting that plaintiff and he had entered into an agreement for legal services; that certain work had been performed and that he had paid certain amounts to the plaintiff. He denied the terms of the agreement as alleged by the plaintiff and denied that any further money was owed to the plaintiff. Defendant also filed a counterclaim alleging malpractice on the part of the plaintiff. The defendant's counterclaim was voluntarily nonsuited by the defendant, who then filed an affirmative defense alleging malpractice on the part of the plaintiff. On plaintiff's motion, defendant's affirmative defense was stricken. Plaintiff amended his complaint to allege that the agreement as to his hourly rate was $125, not $150, per hour. The cause then proceeded to trial.

Plaintiff testified as to his training and experience as an attorney. An attorney for 38 years, he had served as an assistant United State's Attorney for the Northern District of Illinois in the civil division for 2½ years. He then went into private practice doing general civil practice. The work included contracts, estate planning, wills, real estate and appellate work. He had argued cases before the Illinois Supreme Court, as well as the United States Supreme Court.

Plaintiff then testified that on June 14, 1988, he met with the defendant to discuss the defendant's retaining him to handle several

legal matters. Two of the cases were already in litigation, *i.e.*, the Small case and the Peterson case, which was a mechanic's lien action. In addition, plaintiff was also requested to handle a dispute defendant had with Body Therapeutic, Inc., a tenant of defendant's. In all, plaintiff was requested to handle approximately six legal matters for the defendant. Plaintiff received a letter from defendant dated June 18, 1988, in which defendant confirmed that he was retaining plaintiff to be his legal counsel with services provided at the rate of $125 per hour. A check for $1,500 was enclosed.

Plaintiff further testified that he charges his time by the hour and keeps a record of his time and how it was spent in a notebook. The information is then put in a computer, and the pages from the notebook are put in a separate binder. A bill generated by the computer would be sent to a client, such as the defendant, once a month. Cases such as the Small and Peterson cases had separate files. There was also a general file for the defendant which contained matters that were difficult to assign to a specific file.

Plaintiff further testified that, after the initial meeting with the defendant, he met with him at least once per month to discuss defendant's cases. Defendant never complained to plaintiff that his bills were excessive or the work unnecessary, although he did ask plaintiff to refer him to an attorney who could handle some less important matters at a lower rate. After the Small case was completed, defendant continued to make payments on plaintiff's bill. When plaintiff's bill reached $13,000, defendant explained to plaintiff that he was having cash flow problems but did not indicate any problems with plaintiff's work. After the bill exceeded $13,000, defendant retained another attorney.

On cross-examination, plaintiff testified that less than 14% of his practice involved courtroom litigation and that he had participated in less than 10 lawsuits brought in Lake County. He admitted not being a member of various trial bars. At the initial meeting with the defendant, they discussed plaintiff's background and his hourly rate. He did not recall telling defendant that his background in mechanic's lien cases was limited to less than two lawsuits. He did not send out any interrogatories in the Peterson case, nor did he depose any of the parties in that case. He did have conferences with certain people involved in the case. He did prepare an answer and a counterclaim which were part of the court file and a bill of particulars (or response thereto) which for some reason had not been filed. Plaintiff billed defendant 46.4 hours on the Peterson case.

Plaintiff further testified that in the Small case he was attempting on behalf of the defendant to collect $7,000 in rent due. Plaintiff estimated defendant's damages in that suit to be between $12,000 and $15,000 plus attorney fees of $10,000. The case had been filed by defendant's former attorney in the law magistrate division, where the jurisdiction is limited to $15,000. Plaintiff never moved to transfer the case to the law division, where the higher amount of damages he was seeking could be awarded. Plaintiff admitted that in connection with the Small case he billed defendant for the taking of an evidence deposition even though the trial court had barred it from being introduced into evidence because the notice to the opposing side was too short.

Plaintiff further testified that he did not recall telling defendant that he would be billed 15 minutes for telephone calls. He did recall telling him that his minimum hourly rate was $150.

Plaintiff's time records and bills to the defendant were admitted into evidence. Plaintiff then rested. Defendant's motion for a directed verdict was denied.

David Semmelman, an attorney, testified on behalf of the defendant. An attorney since 1983, he was an assistant State's Attorney for Lake County for 2½ years; thereafter, he practiced law in Lake County. He was the attorney for Richard Small in the lawsuit defendant brought against Mr. Small. He himself has tried approximately 20 cases in the law magistrate division of the circuit court.

According to Semmelman, the Small trial took 2½ hours. He moved to bar an evidence deposition on the basis of short notice in the Small case which the court granted. On cross-examination, Sennelman testified that he had oral notice of the proposed evidence deposition a month prior to the scheduled date.

Defendant testified that in June 1988 he met with the plaintiff. They discussed plaintiff's hourly rate, and defendant told him about the Peterson case. Plaintiff did not inform him that his experience in handling mechanic's lien cases was limited or that 90% of his practice was not related to litigation. Had he known this information, he would not have hired plaintiff.

Defendant testified that plaintiff did not discuss his testimony with him prior to the day of trial. He did supply plaintiff with the names of potential witnesses. He became dissatisfied with plaintiff at the time of the Small trial because plaintiff appeared unfamiliar with civil practice in Lake County and seemed uncomfortable and hesitant in court.

On cross-examination, defendant testified that plaintiff never told him he was an expert in mechanic's lien cases, nor did defendant ever inquire as to his level of expertise in such cases. He did retain plaintiff pursuant to the June 18, 1988, letter he sent plaintiff. Defendant received bills from plaintiff, but prior to the conclusion of the Small case, he never complained to plaintiff about the bills he was receiving. Following the Small case, in February 1989, he paid plaintiff $1,000 so plaintiff could do a "standby report."

Bogan Martinovich, an attorney, testified for defendant. An attorney since 1974, he has done litigation exclusively for the last 12 years. He is a member of the American, Illinois and Lake County Bar Associations, as well as the American and Illinois Trial Lawyers Associations.

Martinovich testified that he was the third attorney defendant hired to represent him in the Peterson case and was familiar with the work in that case. After meeting with the defendant, Martinovich reviewed the court file, as well as plaintiff's file on the Peterson case. Plaintiff's file contained correspondence between plaintiff, defendant and the attorney for Peterson. It also contained copies of pleadings prepared by defendant's first attorney, Fred Rawler, and an answer and counterclaim prepared by plaintiff. The file also contained documents which defendant had furnished to plaintiff and a document indicating defendant had been submitted for deposition. There was nothing else in the file regarding discovery. Upon receipt of the file, Martinovich conducted necessary discovery.

Martinovich opined that, based upon his training, education, experience, review of the plaintiff's file and the court file and given the nature of the Peterson case and the fact that another attorney had already done certain work on it, the reasonable number of hours an attorney would have spent on the case was as follows: one to two hours conferring with the defendant; given the deposition he reviewed in this cause, the preparation for defendant's deposition, meeting with the defendants and presenting him for his deposition should have taken three to four hours; and drafting of the answer and counterclaim should have taken no more than one hour. There was no need for the plaintiff to prepare a response to the bill of particulars that had been filed by Peterson since one had already been prepared by Rawler.

Martinovich further testified that he reviewed both plaintiff's file and the court file on the Small case. Because of the size of that case, it did not warrant any more discovery than taking the deposition of the opposing party and a review of documents in order to avoid incur-

ring substantial fees not warranted by the amount in controversy, which in the Small case was some $12,000. In Martinovich's opinion, preparation of pleadings in the case would have reasonably taken one to two hours. Plaintiff presented defendant for deposition which should reasonably be taken in three hours. Because plaintiff did not conduct any discovery, there was nothing to review and nothing more to do other than to meet with the defendant which should not reasonably have exceeded two hours. To those hours, Martinovich would add the time it took to try the case (2½ hours). He concluded that a reasonable time to prepare for the Small case was between 5 to 10 hours.

On cross-examination, Martinovich testified that he did not discuss any of the files with the plaintiff. He was vaguely aware that plaintiff was working on some leases for the defendant. He was not present at any of the conferences between plaintiff and the defendant. According to Martinovich, attorneys handle different cases different ways, although you start out in a standardized process. He agreed that the preparation for and presentation at trial requires that an attorney make judgment calls on behalf of his client.

On rebuttal, plaintiff testified as to his membership in the American, Illinois and Chicago Bar Associations, his service as a commissioner to the supreme court of Illinois and his appointment to the character and fitness committee. He also served as the village attorney for Glencoe for eight years. He conservatively estimated that he had tried hundreds of cases in the Second District of Cook County, which is the equivalent of the law magistrate division in Lake County.

Plaintiff further testified that defendant estimated that the Peterson case involved $80,000. On other cases, it was the principle that mattered to the defendant, not the money. Over the course of his representation of defendant, defendant never complained about the bill, although plaintiff did send him a replacement bill on one occasion.

On cross-examination, plaintiff testified that the activities he testified to on rebuttal all dealt with lawyer ethics. He also admitted that out of the "hundreds" of cases he tried, many were municipal ordinance violations or traffic tickets. In considering whether to adjust a fee for a client, plaintiff would consider the client's economic situation.

During closing argument, defendant's attorney made the following statement:

> "Mr. Ringer [defendant] did not agree to pay [plaintiff] for hours he expended which amounted to be nothing more than a

colossal waste of time, and [defendant] should not be required to pay for hours which were wasted by [plaintiff]."

Plaintiff did not object to this statement.

The jury returned a verdict in favor of the defendant, and this appeal followed.

Plaintiff contends, first, that the jury's verdict in favor of the defendant was against the manifest weight of the evidence.

■ Plaintiff argues, first, that in denying his request for a judgment notwithstanding the verdict, the trial court based its ruling on the fact that plaintiff had not moved for a directed verdict at the close of the case. Plaintiff correctly notes that he need not make a motion for a directed verdict in order to be granted the relief he sought. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1202(b).) The following colloquy occurred during the argument of plaintiff's post-trial motion:

"[Plaintiff]: Section 2—1202(b) provides that relief after trial may include the entry of judgment if, under the evidence in the case, it would have been the duty of the Court to direct a verdict without submitting the case to a jury even though no Motion for Directed Verdict was made; or if made, was denied or a ruling thereon reserved.

THE COURT: Of course, the underlying test then is whether, as a matter of law, plaintiff was entitled to the judgment it [sic] sought.

[Plaintiff]: That's right.

THE COURT: And that no reasonable jury could have determined otherwise.

[Plaintiff]: That's correct.

THE COURT: That clearly is not the situation in this case. The motion wasn't made anyway."

Despite the trial court's final comment, the exchange establishes that its decision to deny the request for judgment notwithstanding the verdict was based upon plaintiff's failure to establish that he was entitled to a judgment as a matter of law.

Plaintiff then argues that the evidence presented established a *prima facie* case for recovery under the theory of an account stated. He correctly points out that defendant agreed to the billing rate of $125 per hour, did not dispute the reasonableness of that rate and did not dispute the number of hours plaintiff expended. Thus, plaintiff theorizes that he need not prove the necessity and reasonableness of the number of hours he expended on the part of the defendant. We disagree.

■ In *Laff v. Chapman Performance Products, Inc.* (1978), 63 Ill. App. 3d 297, the court stated as follows:

"It is well established that when an attorney files an action to recover fees under the theory of account stated, the attorney has the burden of furnishing detailed facts and computations upon which the claimed fee was predicated [citation], and the client is always permitted to prove that the charges are excessive, not warranted by custom and usage, and otherwise unreasonable. [Citations.] Among the factors to be considered in determining the reasonable value of an attorney's services are the following:

'*** the skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. [Citations.]' " *Laff*, 63 Ill. App. 3d at 306-07, quoting *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 711.

■ Plaintiff notes that the pleadings in this cause did not raise the issue as to the necessity and reasonableness of the number of hours he expended on behalf of the defendant. However, in an action by an attorney for fees, mere allegations of an account stated are insufficient to allege liability of the client, and the burden is always on the attorney to show any agreement he has made with a client is fair and reasonable. (*Laff*, 63 Ill. App. 3d at 306.) The agreement between plaintiff and defendant did not specify the number of hours contemplated to be expended on defendant's legal matters. Consequently, it was plaintiff's burden to establish the reasonableness of the hours he expended on defendant's behalf.

■ Actual time spent is only one factor to be considered in determining the reasonableness of the fee charged. (*Laff*, 63 Ill. App. 3d at 307.) While there is no dispute that plaintiff actually expended the hours he billed defendant for, plaintiff presented little or no evidence to establish the reasonableness and necessity of those hours. Plaintiff's testimony consisted of his education and experience as an attorney and a review of his time records. He introduced no expert testimony to establish the reasonableness and necessity of the hours expended, nor did he himself testify to that effect. On the other hand, defendant presented expert testimony that the work performed by the plaintiff would not reasonably have taken the time reflected in the

hours billed by the plaintiff, or was unnecessary. Resolution of this question was properly for the jury. *Laff*, 63 Ill. App. 3d at 308.

Plaintiff's reliance on *Pefferle v. Prairie Mills, Inc.* (1966), 72 Ill. App. 2d 440, is misplaced. In that case, the reviewing court refused to consider the client's argument as to the reasonableness of the attorney's fee because the issue was raised for the first time on appeal. In contrast, in the case at bar, the issue of reasonableness was raised at trial and evidence presented thereon to the jury. Given the lack of evidence from the plaintiff that the hours he expended on behalf of the defendant were reasonable and necessary, we cannot say that the jury's verdict was against the manifest weight of the evidence.

■ Next, plaintiff argues that defendant's expert witness, attorney Martinovich, was never disclosed pursuant to Supreme Court Rule 220(b) (134 Ill. 2d R. 220(b)). However, plaintiff failed to object to Martinovich's testimony on the basis of a violation of Rule 220(b), and, therefore, the argument is waived. (*Puskar v. Hughes* (1989), 179 Ill. App. 3d 522, 531.) Plaintiff further argues that the jury erred in accepting Martinovich's testimony because Martinovich did not review all of the work plaintiff performed for the defendant nor did he testify that plaintiff's work was not reasonable or necessary.

Through his testimony and his records, plaintiff presented evidence that he spent 47.15 hours on the Peterson case and 81.40 on the Small case and 22.95 hours on miscellaneous matters for the defendant. Martinovich's testimony demonstrated that he was familiar with both the Peterson and the Small cases. He testified as to the number of hours that would be reasonable and necessary to accomplish the work plaintiff performed on the Peterson case, 7 hours, and on the Small case, 10 hours. Although plaintiff maintains that Martinovich did not review all of the work plaintiff performed, in view of substantial differences between the hours charged as the hours necessary and reasonable, the jury could properly infer that such work was unnecessary.

The credibility of the witnesses and the weight to be given their testimony are matters for the jury to determine, and unless its determination is manifestly against the weight of the evidence, it will not be disturbed on appeal. (*Moran v. Lala* (1989), 179 Ill. App. 3d 771, 782.) A verdict will not be disturbed merely because the jury could have determined the credibility of the witnesses differently or drawn different inferences of fact, and when credible evidence supports the verdict, the court may not say that the conclusions other than the ones drawn by the jury are more reasonable. (*Gabrenas v. R.D. Werner Co.* (1983), 116 Ill. App. 3d 276, 285.) Contrary to established

case law, plaintiff chose not to offer any evidence as to the reasonableness and necessity of the hours he billed defendant. Thus, on that issue there was only the testimony of the defendant's expert that the hours billed by plaintiff were excessive. Given that the jury is the judge of the credibility of the witnesses, and in light of Martinovich's uncontradicted testimony in this regard, we cannot say that the jury erred in accepting Martinovich's testimony.

We conclude, therefore, that the jury's verdict was not against the manifest weight of the evidence.

Next, plaintiff contends that defendant's statement during closing argument to the effect that plaintiff's work was a "colossal waste of time" and that it represented "hours wasted" deprived him of a fair trial. Plaintiff points out that defendant's attempt to elicit such testimony from his expert was cut short when the trial court sustained an objection to the question.

Plaintiff concedes that he failed to object to the comment of which he now complains. Failure to object is considered a waiver of objections. (*Webb v. Angell* (1987), 155 Ill. App. 3d 848, 852.) Nonetheless, when the argument and misconduct of counsel is so prejudicial as to deny a litigant a fair trial, the instance of misconduct may be considered despite the failure to object and despite corrective steps taken by the trial court. *Webb*, 155 Ill. App. 3d at 852.

Based upon our review of the record, we are convinced that the complained-of comment was not so prejudicial as to deprive the plaintiff of a fair trial. We observe, first, that this is the only comment complained of and not a case where the cumulative effect of several such comments prejudiced the plaintiff in the eyes of the jury. Although plaintiff maintains that the jury probably did not remember the fact that the trial court sustained his objection to defendant's questions to Martinovich as to the usefulness of plaintiff's work, that is mere speculation. Moreover, plaintiff's objection was made before Martinovich could respond, so there was no answer to that question to mislead the jury. As plaintiff himself points out, the jury was instructed that the closing arguments were not evidence. Finally, counsel is allowed broad latitude in drawing reasonable inferences and conclusions from evidence presented at trial during closing arguments. (*Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 273.) Given the difference between the amount of hours Martinovich testified would be necessary to complete work on the Peterson and Small cases and the time plaintiff billed defendant, we cannot say that defendant's remark in closing argument was not a proper inference from the record.

■ Finally, plaintiff contends that the jury was not properly instructed.

During its deliberations, the jury sent a note to the trial court asking "whether it was an all or nothing proposition or could it be split up?" After consulting with the attorneys for the parties and with their mutual agreement, the trial court advised the jury that it was to follow the instructions as given. Plaintiff argues that this exchange indicated that the jury was confused by the jury instructions. An instruction cannot be tendered if the instruction would confuse the jury. (*In re Estate of Pirie* (1986), 141 Ill. App. 3d 750, 769.) In *Pirie*, the jury was instructed as to two different standards in the same instruction, which the appellate court found may well have confused the jury. (*Pirie*, 141 Ill. App. 3d at 769.) However, in the cause before us, plaintiff has not explained how the instructions were confusing to the jury. He merely cites the fact that the jury posed a question to the trial court which the trial court, in effect, did not answer. Nevertheless, the mere posing of a question is not enough to show confusion on the part of the jury. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 463.) We also note that the trial court's response was made after consulting with and securing the mutual approval of the attorneys for both parties. Therefore, we can find no basis for concluding that the jury was confused by the jury instructions in this cause.

Next, plaintiff argues that it was error to give defendant's instruction 3A, which read as follows:

> "In determining whether or not the attorney hours expended by plaintiff, G. Kent Yowell, are reasonable, you should consider the amount of time and labor required, the novelty and difficulty of the legal issues, the skill required to litigate the cases, which were litigated, the amount involved in the case, the plaintiff's experience, reputation and ability."

Plaintiff maintains that this instruction, which was based on *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, was improperly given since in the *Healy* case, there was no agreement as to the hourly rate. However, the fact that the parties had agreed to the hourly rate does not lift from plaintiff his burden of proving the reasonableness of his fee. *Laff*, 63 Ill. App. 3d at 306.

Plaintiff also argues that the trial court erred in refusing plaintiff's instruction 11, which read as follows:

> "When an attorney renders services under such circumstances as reasonably imply that they were performed with the assent and on the request of the person benefitted, he is entitled to compensation."

Plaintiff maintains that his instruction 11 supported his theory of an account stated, which was established, and shifted the burden of proof to the defendant that the services were not performed or that they were not reasonable and necessary.

Jury instructions are to be considered as a whole and must be read together to determine whether they fairly and accurately state the law. (*Pirie*, 141 Ill. App. 3d at 766.) Instructions that incorrectly state the law and mislead the jury should not be given. (141 Ill. App. 3d at 766-67.) Contrary to plaintiff's argument, the burden is always on the attorney to prove that his services on behalf of the client were reasonable and necessary. (*Laff*, 63 Ill. App. 3d at 306.) Moreover, plaintiff's proposed instruction would lead the jury to believe, incorrectly, that all plaintiff need do was to prove the terms of his agreement with the defendant in order to recover the fees he charged. Since we have repeatedly stated in this opinion that a necessary element of plaintiff's action was proof that his fees were reasonable and necessary, plaintiff's instruction 11 does not accurately state the law and was properly refused.

We conclude, therefore, that the jury was properly instructed.

The judgment of the circuit court is affirmed.

Affirmed.

DUNN and BOWMAN, JJ., concur.